**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Gardner,<br><br>        Plaintiff,<br><br>v.<br><br>G.D. Barri & Associates Incorporated,<br><br>        Defendant. | No. CV-20-01518-PHX-ROS<br><br>**ORDER** |

Plaintiff Aaron Gardner worked as a construction manager for Defendant G.D. Barri & Associates, Inc. ("GD Barri"). Gardner filed this suit against GD Barri pursuant to the Fair Labor Standards Act ("FLSA"), alleging he was not paid overtime wages owed to him. Gardner now seeks conditional certification of an FLSA collective. GD Barri opposes conditional certification, claiming Gardner has not identified a group of sufficiently similar individuals to merit collective treatment. Because Gardner has met the low threshold for conditional certification, his motion will be granted.

## BACKGROUND

As alleged in the complaint, "GD Barri provides contract labor solutions to the power and utilities industries." (Doc. 1 at 4). To provide those services, GD Barri hires employees and those employees then work on-site at power companies. For example, Gardner worked for GD Barri as a construction manager from September 2018 until March 2019. During his employment, Gardner "was staffed by GD Barri to a power plant operated by the Arizona Public Service Company." (Doc. 1 at 4). While he was working for GD

Barri, Gardner was paid $75 per hour for each hour worked. Thus, if Gardner worked less than 40 hours in a week, he was paid $75 for each hour worked and if he worked more than 40 hours, he was still paid $75 for each hour. Gardner alleges he often worked more than 40 hours per week. Because he was paid only $75 per hour even when he worked more than 40 hours in a week, Gardner describes GD Barri's compensation scheme as "straight time for overtime." (Doc. 50 at 2).

In July 2020, Gardner filed this suit alleging GD Barri's compensation scheme violated the FLSA's requirement regarding overtime. GD Barri answered the complaint and the parties commenced discovery. Gardner then filed his "Motion for Conditional Certification and Notice." (Doc. 50). That motion seeks conditional certification of an FLSA collective covering GD Barri employees who worked on-site at power plants and were not paid overtime. GD Barri opposes the motion, claiming Gardner's proposed definition for the collective is not administrable.

## ANALYSIS

### I.     Conditional Certification is Appropriate

The Ninth Circuit has approved the two-step "procedure for determining whether the collective mechanism [under the FLSA] is appropriate." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1108–09 (9th Cir. 2018). The first step requires "a preliminary determination" whether the proposed collective is a group of "similarly situated" employees. *Id.* at 1109. If so, the collective is conditionally certified which "results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Id.* The second step comes usually "at or after the close of relevant discovery" and involves an employer seeking "'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id.*

At the first step, "[t]he level of consideration is lenient . . . loosely akin to a plausibility standard." *Id.* Thus, the first step requires only plausible allegations "that the putative [collective] members were together the victims of a single decision, policy, or

plan." *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D. Ariz. 2010). In other words, conditional certification is appropriate when there is a "factual nexus which binds the named plaintiffs and the potential [collective] members together as victims of a particular alleged policy or practice." *Id.*

Gardner seeks conditional certification of an FLSA collective defined as:

> All employees of GD Barri & Associates (GD Barri) who were paid straight time for overtime and staffed to power plants or similar facilities in the last three (3) years.

(Doc. 50 at 2). GD Barri argues this proposed definition is flawed in two ways. First, it allegedly does not describe any individuals because no GD Barri employee was paid "straight time" if he was entitled to overtime. In GD Barri's view, it pays overtime to any employee eligible for overtime. Thus, the collective "as currently defined would be empty." (Doc. 53 at 5). Second, GD Barri argues that assuming the definition is attempting to cover individuals who Gardner believes were paid incorrectly, it is still too broad because it would include "*all* G.D. Barri employees who are currently classified as exempt." (Doc. 53 at 5). The problem with both of GD Barri's arguments is the parties have already agreed upon the exact group of individuals subject to Gardner's definition.

During discovery, Gardner sent an interrogatory asking for GD Barri to "[i]dentify each Class Member by name, position(s), job title(s), dates and location(s) of employment" as well as the individuals' contact information. (Doc. 50-11 at 5). GD Barri responded by producing a list of 188 individuals. While neither party explicitly states as much, those 188 individuals appear to be the only individuals GD Barri subjected to the same compensation scheme as Gardner and also assigned to work at power plants. Accordingly, both parties have already identified the exact employees to be covered by the proposed collective definition. Accordingly, GD Barri's arguments aimed at the proposed definition being uncertain are not convincing.

GD Barri may have significant arguments why the 188 individuals were not "similarly situated" under the FLSA. For example, perhaps the 188 individuals performed such a diverse range of tasks that it will not be possible to avoid an individual-by-individual

analysis regarding entitlement to overtime wages. GD Barri does not, however, make focused arguments on this front. Instead, GD Barri argues that under a broader definition than what is proposed by Gardner, conditional certification would be inappropriate. But as Gardner pointed out in his reply, the list of workers GD Barri references in opposing conditional certification includes "every position and every kind of worker" and "Gardner isn't seeking to bring all such workers into his [collective]." (Doc. 57 at 3). On the exact workers Gardner is trying to bring into his collective, GD Barri provides almost no meaningful explanation how they do not qualify as "similarly situated."

Similarly, GD Barri may have plausible defenses to defeat eventual recovery by members of the collective and GD Barri makes a variety of merits arguments. Now is not the time to delve into the merits of Gardner's claim. Overall, Gardner's proposed collective definition covers an identifiable group of GD Barri employees who were all placed at power plants and were subject to the same compensation structure. Conditional certification is appropriate.

## II.     Form of Notice

GD Barri has objected to Gardner's proposed notice to the collective. GD Barri first objects to the proposed notice including the phrase "'COURT AUTHORIZED' above a formal District Court caption." (Doc. 53 at 12). GD Barri concedes the notice will, in fact, be "court authorized," and also concedes the formal caption provides the same information as found "in the body of the notice." But GD Barri believes the current formatting is an attempt "to imbue [the notice] with judicial imprimatur, which should not be permitted." It is appropriate to identify the notice as "Court Authorized" now that the collective has been conditionally certified. However, there is no need to include a formal case caption. Therefore, Gardner will be required to remove the case caption.

Next, GD Barri objects to the proposed definition in the notice because it allegedly does not describe "a group of employees that actually exists." (Doc. 53 at 13). As explained above, the parties have already agreed on the 188 individuals the proposed definition covers. Therefore, the notice will only be sent to individuals covered by the

definition and those individuals are unlikely to be confused by the definition.

Finally, GD Barri presents an argument not to the form of notice but counsel's conduct. GD Barri argues that once formal notice is sent, Gardner's counsel should be ordered to "cease advertising." (Doc. 53 at 13). GD Barri cites what appears to be an online advertisement from the law firm representing Gardner as the type of behavior the Court should prohibit. The advertisement contains a picture of a worker wearing a hardhat and states "Were you paid straight time for overtime at GD Barri? Find out if you may be owed unpaid wages." (Doc. 53-2 at 2). GD Barri wishes to preclude counsel from posting this content online or conducting any other similar activities in an attempt to reach members of the collective.

The authority provided by GD Barri for limiting "advertisement" is a decision by the Northern District of New York. *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 164 (N.D.N.Y. 2008). That court concluded there was a "potential for abuse and confusion" if plaintiff's counsel were allowed to continue to advertise after a collective was conditionally certified. *Id.* Thus, the *Ruggles* court ordered counsel "to cease in its advertisements to the putative [collective] members and remove from its website any notice of this litigation that does not comport with the court-approved notice." *Id.* The reasoning appears to have been based on the belief that once a court-authorized notice is given in an FLSA lawsuit, the court has "tak[en] the reins of the notice process and [it] will set all of the parameters of that process." *Id.* That reasoning appears correct as far as it goes. But it does not go very far.

There is no dispute the formal notice authorized by the Court is subject solely to the Court's control and counsel cannot alter it. It does not follow, however, that once there is a Court-authorized notice, the Court is empowered to police *all* of counsel's advertising activities. The authority cited in *Ruggles* allegedly granting such power is *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981). In that case the Supreme Court recognized courts may limit communications between counsel and putative class members. But the Supreme Court cautioned "an order limiting communications between parties and potential class members

should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101. Most importantly, the Supreme Court noted "the mere possibility of abuses does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action." *Id.* at 104. Despite citing *Gulf Oil*, the *Ruggles* court did not make specific findings regarding past abuses nor did it make findings regarding the likelihood of future abuses. Thus, the conclusion in *Ruggles* that strict restrictions on counsel's communications were appropriate is difficult to reconcile with the actual rule in *Gulf Oil*.

In the present case, there is no evidence of inappropriate behavior by Gardner's counsel nor is there evidence establishing a likelihood of future inappropriate behavior. Thus, there is no basis for a general restriction regarding counsel's advertising activities. The only appropriate limitation involves counsel's use of the contact information that will be provided because of conditional certification. To prevent misuse of that information, counsel should not initiate direct contact (*e.g.*, emails, letters, text messages, telephone calls) with members of the collective beyond the authorized notice. Counsel may continue to make general advertisements and may respond to inquiries from collective members.

Accordingly,

**IT IS ORDERED** the Motion for Conditional Certification (Doc. 50) is **GRANTED**. The Court conditionally certifies the following collective:

> All employees of GD Barri who were paid straight time for overtime and staffed to power plants or similar facilities in the last three years.

**IT IS FURTHER ORDERED** Plaintiffs' counsel shall remove the formal caption from the proposed notice and distribute the revised notice to the 188 individuals the parties have identified as covered by the collective definition.

…

…

…

- 6 -

**IT IS FURTHER ORDERED** the parties shall comply with the schedule outlined in Plaintiffs' proposed order at Doc. 50-13 at 2.

Dated this 16th day of June, 2021.

Honorable Roslyn O. Silver
Senior United States District Judge